IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:12CV258

| | | |
|---|---|---|
| JUAN WHIPPLE<br>DBA Queen City Tours of Charlotte,<br><br>**Plaintiff,**<br><br>v.<br><br>GARY W. BRIGMAN<br>DBA C-Charlotte Tours,<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **ORDER** |

**THIS MATTER** is before the Court upon Defendant Gary W. Brigman's Motion for Judgment on the Pleadings (Doc. No. 19), Motion for Rule 11(c) sanctions (Doc. No. 20), and Motion to Strike Plaintiff's Surreply (Doc. No. 26). Having considered Defendant's Motions and Memorandum in Support (Docs. Nos. 21, 26), Plaintiff Juan Whipple's Response in Opposition (Docs. Nos. 22, 23), Defendant's Reply (Doc. No. 24), and Plaintiff's Surreply (Doc. No. 25), the Court finds that Plaintiff has failed to plead a prima facie case of trademark infringement pursuant to the Lanham Act. Accordingly, Defendant's Motion for Judgment on the Pleadings is GRANTED, Defendant's Motion for Rule 11(c) sanctions is DENIED, and Defendant's Motion to Strike Plaintiff's Surreply is DENIED.

## I. BACKGROUND

Plaintiff argues Defendant is committing trademark infringement because when Plaintiff's alleged trademarks are entered into the search box within the Google search engine, Defendant's website, C-Charlotte Tours, appears in the resulting relevant links. Google is an Internet "search engine" that allows users to enter keywords in order to find websites relevant to

their needs.[1]  Using the keyword, the search engine combs through Internet data including domain names, text on web pages, and meta tags.  See Retail Servs., Inc. v. Freebies Publ'g, 364 F.3d 535, 541 n. 1 (4th Cir. 2004).  Meta tags are terms that "describe the website."  Id.  Once the search is complete, a Google-designed algorithm returns the relevant links.  Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 150-51 (4th Cir. 2012).

In addition to the relevant links displayed, Google also displays "Sponsored links" located on the screen above and to the right of the relevant links.  Id. at 151.  Owners of the "Sponsored links" may purchase keywords from Google in order to "trigger the appearance" of their link.  Id.  By purchasing keywords, the cite owner acquires the right to have his or her link posted when the purchased keyword or combination of words is entered into the search engine.  Id.

Defendant operates a Charlotte tour business entitled C-Charlotte Tours.  (Doc. No. 1, Pl.'s Compl. 2).  Defendant runs a website in conjunction with his business.  To ensure customers utilizing the Google search engine find Defendant's website, Defendant employs a long list of meta tags.  Included within the tags are the words "queen city," "tours of charlotte nc," "Charlotte NC tour," "tour of charlotte," "Charlotte NC sightseeing," "Queen Charlotte Tours," and "nascar shuttle."  (Doc. No. 1).  When customers using the Google search engine type in any word or combination of words that relate to Defendant's meta tags, domain name, or text on its web pages, Defendant's website will appear as a search result.

Plaintiff's business, operating under the trademarked name Queen City Tours™, offers a variety of Charlotte tours to its customers including a Charlotte African American Heritage Tour

---

[1] While Google is not the only search engine available for Internet use, Google was the only search engine identified in the Complaint.  (Doc. No. 1).  Although not in the Complaint, the Court presents a brief synopsis of basic search tools and terms for the purpose of providing background.

and Pilgrimage and Charlotte Daily City Tour. (Doc. No. 1).  Plaintiff's only registered trademark is Queen City Tours™. (Doc. No. 1).

In his Complaint, Plaintiff alleged Defendant's use of the words "tour," "queen city," "nascar shuttle," and "Charlotte NC tour" as meta tags and key words amounts to trademark infringement pursuant to the Lanham Act.  (Doc. No. 1).  Defendant filed an Answer on June 18, 2012 (Doc. No. 10), followed by a Motion for Judgment on the Pleadings and Rule 11(c) sanctions on August 21, 2012, alleging (1) Plaintiff had failed to plead a prima facie case of trademark infringement, and (2) Plaintiff should be subject to sanctions because the Complaint is frivolous.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." FED. R. CIV. P. 12(c).  In resolving a motion for judgment on the pleadings, a court must accept the nonmovant's allegations as true and view the facts in the light most favorable to the nonmoving party.  Bradley v. Ramsey, 329 F. Supp. 2d 617, 622 (W.D.N.C. 2004) (internal citations omitted).  The court, however, need not "accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal citations omitted).

A Rule 12(c) motion is reviewed under a standard similar to that which is used in Rule 12(b)(6) motions to dismiss, with the "key difference being that on a 12(c) motion, the court is to consider the answer as well as the complaint." Id. (internal citations omitted).  A Rule 12(c) motion is designed to dispose of cases when the material facts are not in dispute.  FED. R. CIV. P. 12(c).  The court can decide the case on its merits by considering the pleadings along with any

3

materials referenced in, incorporated by reference, or attached to the pleadings. FED. R. CIV. P. 10(c).

### III. ANALYSIS

As a preliminary matter, the Court addresses Defendant's Motion to Strike Plaintiff's Surreply pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. Local Rule 7.1(E) provides for an initial memorandum of law, a response, and a reply. Because no rule exists allowing surreply filings, surreplys filed without permission from the Court are disfavored absent permission from the Court prior to the filing of the surreply. Plaintiff's *pro se* status, however, holds him to a "less stringent standard" than a licensed attorney. Haines v. Keiner, 404 U.S. 519, 595-96 (1972). Moreover, in light of the dispositive nature of Defendant's motion, the Court is most concerned with having a fully-developed record and providing ample opportunity for Plaintiff to set forth his response to the motion, including any documentary exhibits to support his position. Accordingly, Defendant's Motion to Strike Plaintiff's Surreply is DENIED. Plaintiff, however, is hereby cautioned to familiarize himself with and obey this Court's Local Rules. Plaintiff is warned that such disobedience could subject him to sanctions.

Plaintiff argues Defendant has used the marks "Queen City Tours™," "Charlotte Black Heritage Tour," "Charlotte Black Heritage Tour and Pilgrimage," "Charlotte African-American Heritage Tour," "Charlotte Black/African-American Heritage Tour," "Black Heritage Tour," and "Charlotte Daily City Tour." Defendant contends using the words "tour," "queen city," "nascar shuttle," and "Charlotte NC tour" as meta tags and key words is not trademark infringement because Plaintiff "does not have a monopoly on Internet search terms that bear portions of his trademark names." (Doc. No. 21, 3). Considering the pleadings and supporting exhibits attached thereto, the Court concludes Defendant failed to use any of the alleged trademarks.

4

Even if Defendant's use of the terms "tour" and "Charlotte NC tour" does amount to use of Plaintiff's trademark Queen City Tours™, Lanham Act protection is not implicated because the terms used are generic.

To prevail on a trademark infringement claim pursuant to the Lanham Act, a plaintiff must establish (1) it has a valid mark that is entitled to protection, (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale or advertising of goods or services, (5) without the plaintiff's consent. Rosetta Stone Ltd. v. Google, Inc., 676 F.3d 144, 152 (4th Cir. 2012) (citations omitted) (internal quotation marks omitted).

**A.      Likelihood of Confusion and Strength of Plaintiff's Trademark**

As to the second prong, the protected trademark must actually be *used* by the defendant to implicate protection. Actual use of a trademark typically means using a "reproduction, counterfeit, copy, or colorable imitation" of the mark that creates a likelihood of confusion. Petro Stopping Ctrs., L.P. v. James River Petroleum, Inc., 130 F.3d 88, 91 (4th Cir. 1997). When the defendant's use of the trademark is likely to produce confusion in the minds of consumers about the origins of the services in question, a likelihood of confusion exists. KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 117-18 (2004). "If any confusion results, [however, from use of a well-known or descriptive phrase,] that is a risk the plaintiff accepted when it decided to identify its product with a mark that uses [such] a well-known or descriptive phrase." Id. (citations omitted).

Seven factors aid the court in determining whether a likelihood of confusion exists: "(1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of

5

advertising used by the mark holders; (6) the defendant's intent; and (7) actual confusion." CareFirst of Maryland, Inc.v. First Care, P.C., 434 F.3d 263, 267-68 (4th Cir. 2006) (citations omitted). Because the factors are not of equal importance and are applied on a case-by-case basis, the Court applies the only factor considered relevant to Plaintiff's case. See Annheuser-Busch, Inc. v. L & L Wings, Inc., 962 F.2d. 316, 320 (4th Cir. 1992) (holding where one factor could reasonably be dispositive to the determination of likelihood of confusion, consideration of the remaining factors was unnecessary). Here, the strength or distinctiveness of Plaintiff's mark is dispositive because the trademarks are weak, and if anything, are associated with unique, distinctive trademarks owned by third parties.

A trademark's strength is based on the likelihood of a consumer associating the mark with a unique source. CareFirst, 434 F.3d at 269. A weak trademark is "often used by other parties." Id. at 271. In CareFirst, the Fourth Circuit held Plaintiff's "CareFirst" mark was weak because the words "Care," "First," and even "Carefirst" were frequently used by competitors. Id. at 269-70. Because of the frequent use by third parties, the court concluded that it was unlikely the term was distinctive. Id. at 270. ("A strong trademark is one that is rarely used by parties other than the owner of the trademark, while a weak trademark is one that is often used by other parties.") (citations omitted). Even CareFirst's several million memberships, hundreds of press articles, and fifty million dollar advertising campaign failed to strengthen its mark. Id. at 271.

This factor weighs heavily in favor of Defendant. Plaintiff argues Defendant's use of the words "tour," "queen city," and "nascar shuttle" amount to infringement. Not only are the two words "tour" and "queen city" frequently used by others in Plaintiff's line of business, but the term "Queen City" denotes the City of Charlotte, not Plaintiff's tour business. If anything,

6

Case 3:12-cv-00258-FDW-DSC   Document 28   Filed 02/13/13   Page 6 of 9

Plaintiff claims ownership of marks that are not his own.[2]  A consumer seeing the word "tour" or the word "queen city" certainly would not associate the terms with one unique company.  As for the term "nascar shuttle," it is more than likely the term is a unique identifier for Nascar, Inc., considering NASCAR™ is currently a registered trademark of Nascar, Inc.[3]  Because Plaintiff's alleged protected marks are weak, and if anything, are associated with unique, distinctive trademarks owned by third parties, the Court finds it irrelevant to engage in the likelihood of confusion analysis further.

**B.     Generic Terms**

Even if Defendant's use of the words "tour" and "Charlotte NC tours" as Google search terms do present a likelihood of confusion under the Lanham Act, the terms are unprotected because they are generic.  Thus, Plaintiff cannot satisfy the first prong of trademark infringement, a valid mark entitled to protection.  Trademarks "identify and distinguish" goods [or services] produced by one person "from those manufactured or sold by others and . . . indicate the source of the goods [or services]."  15 U.S.C.A. § 1127 (West 2006).  Unless the mark can serve to "distinguish[] the applicants goods [or services] from those of others," it cannot be protected.  Retail Services, Inc. v. Freebies Publ'g, 364 F.3d 535, 538 (4th Cir. 2004) (internal citations omitted).

Generic words are those used to suggest a common meaning that neither alerts the public to the source of the goods or services nor distinguishes that good or service from any other.  Id.  Thus, a generic word "may not be appropriated as exclusive property" under trademark law

---

[2] Over fifteen currently registered trademarks contain the words "Queen City" including the City of Charlotte's "Crown of the Queen City."  UNITED STATES PATENT AND TRADEMARK OFFICE, www.tess2.uspto.gov, (last visited February 6, 2013).
[3] UNITED STATES PATENT AND TRADEMARK OFFICE, www.tess2.uspto.gov, (last visited February 6, 2013).  Absent a licensing agreement, Plaintiff's use of 'nascar shuttle' may actually amount to infringement itself.  That issue, however, is not before the Court.

7

because it "merely employs the common name of a product or service" and never functions to identify and distinguish the products of one seller.  Sara Lee Corp. v. Kayser—Roth Corp., 81 F.3d 455, 464 (4th Cir. 1996); see also America Online, Inc v. AT&T Corp, 243 F.3d 812, 820-21 (4th Cir. 2001) (holding "you've got mail" was generic because the phrase did not come from a unique source but was a common-sense phrase); Freebies, 364 F.3d at 538, 544 (holding "freebies" was generic, and therefore not protectable, because it was often used by competitors, it was used generically by its owner, and was often used by third parties in trademark registrations) (citations omitted).

If the Court were to agree with Plaintiff that the use of the non-distinctive words "tour" and "Charlotte NC tours" was infringement, it would be impossible for other Charlotte tour businesses to market themselves.  "[I]f a business were permitted to appropriate a generic word as its trademark, it would be difficult for competitors to market their own brands of the same product." Freebies, 364 F.3d at 538 (citations omitted) (internal quotation marks omitted). Accepting the Plaintiff's argument would mean businesses like Geico would have a claim for infringement against any company using the word "insurance" while car salesmen would be prohibited from using the terms "car" or "automobile" because Volvo, Chevrolet, or Toyota trademarked the words.

Because the words "tour" and "Charlotte NC tours" do not identify or distinguish Plaintiff's services from any other, the use of the term "tour" as a key word and meta tag is generic, and thus, unprotected.  Accordingly, Defendant's Motion for Judgment on the Pleadings is GRANTED.

**C.     Rule 11(c) Sanctions**

Defendant has also requested the Court impose sanctions because Plaintiff's claims have no legal basis and are frivolous, bad faith filings. The Court disagrees and declines to impose sanctions. Imposing sanctions is within the discretion of the court, and when considering sanctions against a *pro se* party, the court must take into account the special circumstances often surrounding a *pro se* litigant's filings. Haines v. Keiner, 404 U.S. 519, 595-96 (1972) (concluding *pro se* filings are held to "less stringent standards than formal pleadings drafted by lawyers"). Trademark law's complexity coupled with a new area of law surrounding the use of trademarks in linked advertisements and domain names on the Internet qualify as special circumstances in this case. However, both attorneys and *pro se* litigants have an obligation to avoid filing frivolous law suits. FED. R. CIV. P. 11(c). Plaintiff is hereby cautioned to refrain from filing any further pleadings claiming ownership over generic terms or terms held by third parties. Plaintiff is warned that such filings could subject him to sanctions.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Judgment on the Pleadings (Doc. No. 19) is GRANTED, Defendant's Motion for Rule 11(c) sanctions (Doc. No. 20) is DENIED, and Defendant's Motion to Strike Plaintiff's Surreply (Doc. No. 26) is DENIED. The Clerk is respectfully directed to CLOSE THE CASE and terminate all pending motions and deadlines, including trial.

IT IS SO ORDERED.

Signed: February 13, 2013

Frank D. Whitney
United States District Judge

9

Case 3:12-cv-00258-FDW-DSC   Document 28   Filed 02/13/13   Page 9 of 9